# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **CITY OF ANNISTON, ALABAMA, et. al.**, | ] <br> ] <br> ] |
| Plaintiffs, | ] <br> ] |
| v. | ]  CV-08-BE-1882-E <br> ] |
| **HONORABLE JOEL E. LAIRD, et. al.,** | ] <br> ] |
| Defendants. | ] <br> ] <br> ] |

## MEMORANDUM OPINION

This matter is before the court on "Plaintiffs' Motion for Preliminary Injunction" (doc. 12) as amended (doc. 24); "Plaintiffs Palmore and Bennett's Motion for Expedited Hearing on their Motion and Amended Motion for Injunctive Relief" (doc. 26); "Calhoun County, Alabama, Calhoun County Commission, Ken Joiner, and 'Calhoun County Development Authority a/k/a McClellan Development Authority's' Motion to Dismiss" (doc. 14); "Motion to Dismiss of the Anniston-Calhoun County McClellan Joint Powers Authority (JPA), by and through the Calhoun County Commission as Successor in Interest" (doc. 22); "Motion to Dismiss by Defendant Joel E. Laird" (doc. 27); and "Defendant Robert Gates's Motion to Dismiss, or, Alternatively, for More Definite Statement" (doc. 36).

Because various motions to dismiss raised jurisdictional and standing issues, the court held a hearing on December 4, 2008 to address those issues before ruling on the motion for preliminary injunction. At that hearing, counsel for Defendant Robert Gates and the Department

1

of Defense was present, and advised the court that neither of his clients had any interest in intervening as a plaintiff in this case, and that he would be filing soon thereafter a motion to dismiss on behalf of Robert Gates.  As Defendant Gates has now filed that motion and all parties have had an opportunity to respond to the Complaint and motion for preliminary injunction, the court will now rule on the threshold questions such as standing to sue and jurisdiction.  Having reviewed the parties' briefs and the record, the court will ORDER as follows: it will GRANT the motions to dismiss (docs. 14, 22, 27, & 36) for lack of standing, DISMISSING all remaining claims in this case.  In light of that ruling, the court finds to be MOOT the motion for expedited hearing (doc. 26); and the motion for preliminary injunction (doc. 12) as amended (doc. 24).

## Background

In 1995, the Base Realignment and Closure ("BRAC") Commission voted to permanently close Fort McClellan, a United States Army installation located within the corporate limits of the City of Anniston.  The process for closing United States military installations and turning the surplus property, real and personal, at these installations over to civilian control or ownership is governed by 10 U.S.C. § 2687 note and 24 C.F.R. § 586.20, et. seq.  As part of this process, the Department of Defense recognizes a Local Redevelopment Authority ("LRA"), which is responsible for, among other duties, drafting a redevelopment plan for the surplus property (taking into consideration the needs of the community's homeless), publicizing the available property, and being involved in the transfer of property from the United States to civilians or civilian entities.

Sometime before September 10, 1998, the City of Anniston and Calhoun County formed the Anniston-Calhoun County Fort McClellan Development Joint Powers Authority (the "JPA")

as a non-profit unincorporated association for the purpose of preparing a Fort McClellan redevelopment plan.  On September 10, 1998, the Secretary of Defense appointed the JPA as the sole LRA for the Fort McClellan, Alabama Redevelopment Project.  Accepting the JPA's redevelopment plan, the Department of Defense obligated itself to convey Fort McClellan property to the JPA as economic development conveyances under the Defense Base Closure and Realignment Act.  The record does not reflect that any challenges to this appointment were presented until the 2006 lawsuit, discussed later.  Throughout the next ten years, the Department of Defense conveyed various Fort McClellan real properties, some directly from the Department to public entities, and others from the Department to the JPA, which in turn conveyed the properties to purchasers.

On September 18, 2006, James Coxswell and Donald Stewart filed a complaint and later, two amendments to that complaint, against the JPA and other defendants – including the remaining Plaintiffs in the current suit, Stan Bennett and Herbert Palmore –  in the Circuit Court of Calhoun County, Alabama, alleging among other things that the JPA was not a validly constituted entity and lacked the capacity to acquire and convey the Fort McClellan property. The case was removed to this court, which remanded the case to state court for lack of jurisdiction.  On August 22, 2008, Defendant Laird, the Circuit Court Judge to which the case was assigned, granted plaintiffs' motion for partial summary judgment, finding that the JPA was not a validly created or constituted entity under Alabama law and thus, dissolving it, removing the JPA as the LRA for the Fort McClellan project, and appointing the Defendant Calhoun County (with the Calhoun County Commissioner as administrator) to take over the role that the JPA had held in McClellan's redevelopment. It also provided that the transfer of assets from the

JPA to Calhoun County would be immediate.  Judge Laird entered an Amended Order to the same effect on September 16, 2008, but also added language that the court's order was not final, and that the court retained jurisdiction to ensure compliance with its order.

On October 10, 2008, the City of Anniston (suing in its own capacity and as the derivative representative of the JPA) and Herbert Palmore and Stan Bennett ("in their capacities as members of the Board of Anniston-Calhoun County Fort McClellan Development Joint Powers Authority, who sue derivatively pursuant to Rule 23.1, *Fed. R. Civ. P.*") commenced the instant suit, filing a verified Complaint as required by Rule 23.1.  (doc. 1).   On October 28, 2008, Plaintiffs filed an Amended Complaint that was unverified. (doc. 11).  As noted previously, all Defendants filed motions to dismiss the suit.  In his motion to dismiss, Robert Gates advised the court that, in light of Judge Laird's ruling in *Coxswell*, the Department of Defense had chosen to recognize Calhoun County as the LRA for the Fort McClellan project.

The record in this federal case does not include the entire record of the *Coxswell* case in the Circuit Court of Calhoun County.  It does, however, reflect a notice from the Supreme Court of Alabama with a fax date of November 17, 2008 that the *Coxswell* case had been docketed for appeal.

Although the City of Anniston originally was a Plaintiff in this action, Anniston has since moved to dismiss its individual (doc. 16) and derivative (doc. 32 ) claims in accordance with resolutions (08-R-135, 08-R-152) passed by a majority of the City Council of the City of Anniston.  The court granted those motions (docs.  19, 34), and Anniston is no longer a party Plaintiff.  The two remaining Plaintiffs are Herbert Palmore and Stan Bennett, both of whom served as JPA board members and Anniston City Council members at the time of Judge Laird's

ruling in *Coxswell*. Herbert Palmore remains on the Anniston City Council, but Bennett does not; after the filing of the instant suit, Bennett lost his bid for reelection to that council.

## Motions Raising Challenges to Jurisdiction, Etc.

Defendants raise numerous bars to this court's addressing the merits of this case, including: (1) lack of standing; (2) lack of subject matter jurisdiction; (3) the *Rooker-Feldman* doctrine; (4) the *Younger* abstention doctrine; (5) the doctrines of *res judicata* and collateral estoppel; and (6) sovereign immunity. Because the court finds the Plaintiffs lack standing, the court need not address the other grounds urged for dismissal.

## Lack of Standing

In their Motions to Dismiss and their briefs supporting their motions, Defendants argue that the remaining Plaintiffs, Palmore and Bennett, have no standing to assert derivative interests of the JPA, an invalid and dissolved entity. *See, e.g.,* Def. Gates's Mot. Dismiss 4. Despite questioning standing, Defendants have cited no case law addressing this issue.

Article III of the United States Constitution limits the jurisdiction of federal courts to genuine cases or controversies. *Allen v. Wright*, 468 U.S. 737, 750 (1984). A party invoking a federal court's authority must demonstrate that he has Article III case-or-controversy standing by meeting three elements. First, the party must "'show that he personally has suffered some actual or threatened injury'" that triggers federal jurisdiction. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982) (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)). The standing requirement "reflects a due regard for the autonomy of those persons most directly affected by a judicial order." *Id.* at 473. Further, it forecloses the use of federal courts by interested bystanders or as

5

"publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Id.* "The plaintiff must have a 'personal stake in the outcome' sufficient to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 582 (1992) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

In addition to proving an "injury in fact," a plaintiff asserting standing to sue must prove that "a causal connection [exists] between the injury and the conduct complained of." *Id.* at 560. Finally, he must demonstrate that the injury is "redressable by the court." *Valley Forge Christian College*, 454 U.S. at 472.

Accordingly, the court must determine whether Plaintiffs' Amended Complaint asserts that they have suffered some injury in fact caused by Defendants and redressable by this court, to thus establish that they have standing to sue. Plaintiffs express outrage that Laird, a state court judge, dissolved the JPA – an LRA recognized by the government for the Fort McClellan reorganization project – and unilaterally appointed a successor LRA, allegedly in violation of the federal statutory scheme for closing military bases.

Two of the entities that Judge Laird's order would appear to affect most directly – the federal government and the City of Anniston – are not part of this lawsuit and expressly demonstrated their desire *not* to participate. If Laird's order does indeed violate federal statutes and wrongfully usurp the federal government's right to recognize the appropriate LRA for Fort McClellan, then the court would expect that the federal government would be first in line to file a complaint. However, the government has not done so; rather, the Department of Defense has chosen to recognize Calhoun County, the entity that Judge Laird appointed in place of the JPA,

as the federal government's LRA.  *See* Def. Gates's Mot. Dismiss 7 n.3.  The two entities that formed the JPA, the City of Anniston and Calhoun County, are not currently Plaintiffs in the suit; the City of Anniston originally was a Plaintiff but later voluntarily dismissed its claims, and Calhoun County, as successor JPA, could hardly be expected to object to its own appointment.  Instead, the only remaining Plaintiffs are two individuals who served on the Anniston City Council and were appointed to the JPA as representatives of that City Council.  The court notes that the City of Anniston has passed resolutions dismissing its claims in the instant case.  The court cannot fathom why Plaintiffs would have standing to sue if the entity they purport to represent has formally dismissed its own claims in this suit.

      Plaintiffs, however, claim to bring this lawsuit derivatively on behalf of the JPA and assert that they have a right to do so because they were members of the board of the JPA on August 22, 2008, the date Judge Laird entered the order in *Coxswell* declaring the JPA invalid and dissolving it.  That order has been appealed, but unless and until it is overturned, Plaintiffs remain subject to it.   Plaintiffs filed the instant suit in October of 2008, *after* Judge Laird's order finding that the JPA never legally existed according to Alabama law.  Plaintiffs have provided no case or statutory law supporting their standing to bring a suit derivatively on behalf of an entity *after* a court has determined that the entity never legally existed.  Indeed, this court is aware of no such support.  Accordingly, the court finds that Plaintiffs have not asserted an injury in fact caused by Defendant(s) and redressable by this court, and therefore, have not met their burden of demonstrating that they have standing to sue derivatively in the instant case.  *See Lujan*, 504 U.S. at  560 (stating that "[t]he party invoking federal jurisdiction bears the burden of establishing these elements [of standing].")*.*  Although counsel for Plaintiffs refers to these

Plaintiffs' *individual* claims in a motion to withdraw filed on behalf of another party (doc. 16), the court finds that Plaintiffs Palmore and Bennett failed to articulate any individual claims in their Amended Complaint. In light of those findings, the court need not address Defendants' other challenges to its jurisdiction.

Therefore, the court will GRANT the motions to dismiss (docs. 14, 22, 27, & 36), DISMISSING all remaining claims in this case. Having found that the Plaintiffs lack standing to sue, the court will find as MOOT the motion for expedited hearing (doc. 26); and the motion for preliminary injunction (doc. 12) as amended (doc. 24).

DONE and ORDERED this 14th day of May, 2009.

/s/ Karon O. Bowdre
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE